UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ERICK VIRGIL HALL,<br><br>           Petitioner,<br><br>v.<br><br>TYRELL DAVIS,<br><br>           Respondent. | Case No. 1:18-cv-00218-DCN<br><br>**CAPITAL CASE**<br><br>**ORDER ON PENDING MOTIONS** |

In this capital habeas case, Petitioner Erick Virgil Hall (Petitioner) is proceeding to the merits of Claims 2, 3, 12, 14, 20, 37, 38, 39, and 40. Dkts. 63, 70. Briefing is underway. Waiting in the wings are various claims that are or may be procedurally defaulted. Those will be heard after the decision on the merits if habeas corpus relief is not granted. Now pending before the Court are Petitioner's Second Motion for Discovery (Dkt. 55) and Motion to Preserve Evidence (Dkt. 58), which are fully briefed. Having reviewed the record and having considered the parties' briefing, the Court enters the following Order.

**REVIEW OF PENDING MOTIONS**

1.      **Petitioner Hall's Second Motion for Discovery (Dkt. 55)**

Petitioner earlier requested that the Court permit him to conduct discovery of materials related to witnesses who testified that Petitioner had a bad character to support the State's aggravation argument at sentencing. Dkt. 55. Now Petitioner concedes in his Reply that the Second Motion for Discovery should be denied without prejudice, as a result of the litigation plan this Court has decided to pursue—which is to hear the merits of claims

properly before this Court and defer procedural default issues until after a merits decision issues. Dkt. 60.

In the future, *Shinn v. Ramirez*, 142 S. Ct. 1718 (2022), will bear on whether Petitioner will be permitted to engage in additional discovery. That case substantially curtails the Ninth Circuit's previous decisions on discovery in habeas corpus matters. Generally, the merits of the claims in a federal habeas corpus petition are decided on the record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Id*. at 186. Title 28 U.S.C. § 2254(e)(2) prohibits the use of new evidence in federal habeas matters without satisfying strict requirements (explained below).

The Ninth Circuit has held that *Pinholster* and §2254(e)(2) do not apply to evidence used to overcome procedural default and timeliness bars. *Dickens v. Ryan*, 740 F.3d 1302, 1320-21 (9th Cir. 2014) (en banc). But in *Ramirez*, the United States Supreme Court acknowledged that "there is no point in developing a record for cause and prejudice if a federal court cannot later consider that evidence on the merits," and that where a petitioner cannot meet § 2254(e)(2), a "*Martinez* hearing would serve no purpose," providing "reason to dispense with *Martinez* hearings altogether." *Id*. at 1738–39. This same reasoning applies to attempts to introduce evidence without an evidentiary hearing. *Id*. at 1738 (citing *Holland v. Jackson*, 542 US. 649, 653 (2004) (per curiam)). "*Martinez* did not prescribe largely unbounded access to new evidence whenever postconviction counsel is ineffective," the *Ramirez* Court clarified. *Id*. at 1737.

ORDER ON PENDING MOTIONS - 2

*Ramirez* reiterated *Holland*'s holding that post-conviction counsel's fault in failing to produce evidence in state court is attributable to their clients and does not satisfy 28 U.S.C. § 2254(e)(2). *Id.* at 1735–36. Petitioners must cease making this argument in federal court and focus any discovery requests on those claims for which § 2254(e)(2) is met. Federal courts "have no warrant to impose any factfinding beyond § 2254(e)(2)'s narrow exceptions." *Id.* at 1740.

Post-*Ramirez*, the Court will require a petitioner to make a § 2254(e)(2) showing before being permitting to engage in discovery for the purpose of overcoming procedural default. Section 2254(e)(2) provides that, "[i]If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless he meets several stringent elements set forth in § 2254(e)(2)(A)(i) or (ii) and (e)(2)(B). The statutory phrase "failure to develop the factual basis of a claim" means that "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.*; *see also Hurles v. Ryan*, 752 F.3d 768, 791 (9th Cir. 2014) ("A petitioner who has previously sought and been denied an evidentiary hearing has not failed to develop the factual basis of his claim.").

For example, as to the request for discovery regarding witness McCuster, Petitioner asserts that his "trial counsel was ineffective at sentencing in failing to adequately investigate and impeach the State's sentencing witnesses' testimony" and blames post-

ORDER ON PENDING MOTIONS - 3

conviction counsel for a failure to raise that issue in state court. Dkt. 55-1, p. 11. This set of facts would not appear to satisfy § 2254(e)(2).

As to witnesses Dunaway, Deen, and Sebastian, Plaintiff asserts that his "trial counsel rendered ineffective assistance of counsel for failing to investigate the State's evidence in aggravation," and that "post-conviction counsel attempted to develop these claims, but the state court created a defective fact-finding process by failing to grant adequate discovery or an evidentiary hearing." *See* Dkt. 55. These facts may satisfy the diligence requirement.

If this case proceeds past the properly-presented merits claims, Petitioner may renew his motion, reduced and refined per *Ramirez* and its progeny. The parties will need to provide adequate briefing on the developing status of the law as it applies in this case.

**2.      Petitioner's Second Motion to Preserve Evidence (Dkt. 58)**

Petitioner has filed a Second Motion to Preserve Evidence. Dkt. 58. Earlier in this matter, Petitioner requested a court order to preserve evidence, but the Court ordered Petitioner to first petition the state court for an order. Dkts. 40, 56. Petitioner has done so, and the state court has determined that it does not have jurisdiction over the request and has deferred resolution of the issue to this Court for a decision. *See* Dkt. 58-3.

Petitioner incorporates by reference his first Motion to Preserve Evidence and Reply, *see* Dkts. 40 & 43, as well as his filings regarding discovery, *see* Dkts. 45, 54, 55, & 60. Petitioner requests that the Court order preservation of all of the evidence in his case, or at least all of the evidence he has requested in discovery. The parties have referenced Judge B. Lynn Winmill's order on evidentiary preservation in another pending case that

this Court now presides over, *Abdullah v. Ramirez*, 17-cv-00098-DCN, Dkt. 2. This Court draws from Judge Winmill's observations about applicable standards of law as the foundation of this Order.

A federal court "has the inherent discretionary power to make appropriate evidentiary rulings regarding the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Cherrix v. Braxton*, 131 F. Supp. 2d 756, 770-71 (E.D. Va. 2001). Under the All Writs Act, 28 U.S.C. § 1651, all courts established by an "Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The All Writs Act exists to help federal courts "issu[e] orders appropriate to assist them in conducting factual inquiries," and that authority "extend[s] to habeas corpus proceedings." *Harris v. Nelson*, 394 U.S. 286, 299–300 (1969).

Such an order may extend to nonparties who "are in a position to frustrate ... the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (discussing the All Writs Act). For example, it is "appropriate for a federal court to order a state official to retain, preserve, or protect tangible things." *Cherrix*, 131 F. Supp. 2d at 782 (citing *United States v. Shipp*, 203 U.S. 563, (1906) ("*Shipp I*"); *United States v. Shipp*, 214 U.S. 386 (1909) ("*Shipp II*")).

Idaho law supports the concept of retention of evidence in death penalty cases. Idaho Code § 67-2919(6)(a) protects the retention of sexual assault evidence kits, providing, that such kits be retained in death penalty cases "until the sentence in the case has been carried out and no unapprehended persons associated with the offense exist." The statute defines

body
"sexual assault kit" as "a set of materials, such as swabs and tools for collecting blood samples, used to gather forensic evidence from a victim of reported sexual assault and the evidence obtained with such materials." Idaho Code § 67-2919(14)(a). In addition, Idaho Court Administrative Rule 38(c) prohibits destruction of exhibits in capital cases while a defendant is incarcerated. Anything not deemed a part of a "sexual assault kit" or anything that was not an exhibit at trial is not protected.

Litigants have their own inherent duty to preserve evidence in a pending or prospective court action, even without a discovery request or order. *See Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). However, criminal death penalty cases are different from regular civil cases in that third-party law enforcement agencies generally function as decades-long custodians of critical evidence upon which the defendant's life or death may turn. Therefore, although the prosecution generally is under a duty to preserve exculpatory evidence, and its agents likewise share that duty, factors such as poor communication, standard evidence destruction procedures, and revolving employees can contribute to inadvertent destruction of death penalty case evidence.

In a case of this magnitude, it should not be assumed that every person charged with custody of the evidence will understand its potential importance and the duties of preservation after a state case is closed. Consider the facts and outcome of this civil rights case, brought after important evidence had been destroyed by a state court clerk.

> At the time the evidence was destroyed, Petitioner's case was before the United States Supreme Court for direct review. It is unclear whether, at that time, the Chief Deputy Clerk made any effort to examine Petitioner's case file in order to ascertain the legal posture of his case. He did acknowledge,

ORDER ON PENDING MOTIONS - 6

> however, that he knew the Supreme Court of Virginia had recently affirmed Petitioner's conviction.
>
> Additionally, several weeks prior to the destruction, a new statute had been enacted. That statute directed Clerks of Court to preserve evidence in all criminal cases until the exhaustion of all appellate remedies and in all death cases until execution. Va. Code § 19.2–270.4:1 (1950, as amended). Likewise, the official Arlington Circuit Court Clerk's Office policy in effect at that time was to preserve evidence in death penalty cases until all appeals had run their course.
>
> As the state court found, the Chief Deputy Clerk had no knowledge of the new preservation statute. Before destroying the evidence, however, he was advised by two of his subordinates not to do so. Of those colleagues, one counseled against the destruction specifically because Petitioner's is a death penalty case. In his own defense, the Chief Deputy Clerk explained that he was unfamiliar with the new law and was merely performing a routine housecleaning, meant to rid the storage room of unnecessary exhibits. Petitioner rejoins that state officials are presumed to know the law. Furthermore, Petitioner points out that, prior to obtaining the court order authorizing the destruction of exhibits, the Chief Deputy Clerk failed to consult with the investigating detective, the Office of the Commonwealth's Attorney, or the Virginia Attorney General's Office.
>
> Reviewing the Chief Deputy Clerk's actions, the Supreme Court of Virginia concluded that although he was negligent and exercised poor judgment, the clerk did not act in "bad faith" as contemplated by *Youngblood* and *Trombetta*. This conclusion was predicated on the state court's finding that the Chief Deputy Clerk did not specifically intend to destroy exculpatory evidence.

*Lovitt v. True*, 330 F. Supp. 2d 603, 632 (E.D. Va. 2004), *aff'd*, 403 F.3d 171 (4th Cir. 2005).

A death penalty case can span several decades in federal court because of size, complexity, gravity, and repeated excursions back to state court. An important

consideration is that technology unknown today but developed in the future may be applied to evidence that exists today but may be lost or destroyed tomorrow.

A case in point:

> Kirk Bloodsworth, a former Marine discus champion … had been sentenced to death in Maryland in 1985 for the murder and rape of a nine-year-old girl based on the testimony of five eyewitnesses who claimed to have seen him with the victim shortly before she disappeared. The Court of Appeals of Maryland reversed Bloodworth's conviction and remanded the case for retrial the following year because the prosecution had withheld exculpatory evidence at the trial. But Bloodsworth was again convicted in 1987 and sentenced to life in prison. This time, the conviction was affirmed.
>
> At that point, an experienced death penalty lawyer, Robert Morin, entered the case at the behest of Gary Christopher, the chief of the Capital Defense Division of the Maryland Public Defender's office. Morin filed a motion to preserve the physical evidence, even though it had been examined earlier and no biological material other than the victim's had been detected. Morin arranged for the evidence to be sent to Edward T. Blake, a pioneer of forensic applications of a DNA replication technique known as polymerase chain reaction (PCR). Blake found a tiny semen spot and, after DNA replication, positively eliminated Bloodsworth as its source, leading to his exoneration. Tim Junkin, who wrote a book about the case, described Bloodsworth's good fortune:
>
>> When he heard the news, Gary Christopher considered Kirk Bloodsworth to be the luckiest man alive. To have Bob Morin as an advocate, for him to file a motion to preserve evidence that was supposedly of no value, to have this coincide with an emerging technology that could exclude a person from a tiny sperm sample, to have a stain of semen discovered on discarded clothing after nine years, to have all this converge—it really was miraculous.

Rob Warden, *Reflections on Capital Punishment*, 4 Nw. J. L. & Soc. Pol'y 329, pp.

ORDER ON PENDING MOTIONS - 8

23-24 (2009). *See also Cherrix*, 131 F. Supp. 2d at 767 (a motion for preservation and testing of DNA evidence was granted where technology had changed during the six years the case was pending, to include new STR and mitochondrial methods).

Respondent raises a valid point in arguing that habeas corpus is not an arena for free-for-all discovery. However, as discussed above, § 2254(e) provides a narrow passage for evidentiary development in federal habeas corpus proceedings. In addition, future legal developments might bear upon the use of evidence in capital cases. As a pair of wise criminal lawyers has advised, "When in doubt, move to preserve evidence." Jeffrey E. Stone & Corey B. Rubenstein, *Criminal Discovery: Leveling the Playing Field*, 23 No. 2. Litigation (1997), p. 45.

This Court agrees with Judge Winmill that "the ability of the parties to test or re-test capital case evidence when necessary should not be 'left to the whim of evidence custodians and the fortuity of their inefficiency.'" *Abdullah*, 17-cv-00098-DCN, Dkt. 2 at 9 (quoting Cynthia E. Jones, *Evidence Destroyed, Innocence Lost: The Preservation of Biological Evidence Under Innocence Protection Statutes*, 42 Am. Crim. L. Rev. 1239, 1254 (2005)). This is especially true in criminal cases because, once evidence has been lost or destroyed due to negligence or agency evidence destruction policies, "the law offers the complaining party little recourse" in the absence of a showing of bad faith. *Id*. at 10.

Most criminal cases unfortunately have the vantage point of addressing the issue of evidence preservation retrospectively—after the evidence has already been destroyed—to determine what remedy or sanction, if any, should be imposed. *See, e.g., California v. Trombetta*, 467 U.S. 479, 488–90 (1984) (stating that "the question presented is whether

the Due Process Clause requires law enforcement agencies to preserve breath samples of suspected drunken drivers in order for the results of breath-analysis tests to be admissible in criminal prosecutions," and concluding "that the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial").

In *Trombetta*, the Court acknowledged that it had "never squarely addressed the government's duty to take affirmative steps to preserve evidence on behalf of criminal defendants" and that there was an "absence of doctrinal development in this area." *Id*. at 486. The Court recognized: "Whenever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of materials whose contents are unknown and, very often, disputed." *Id*. In the context of deciding the post-destruction evidentiary admission question before it, the Court determined:

> California's policy of not preserving breath samples is without constitutional defect. Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, *see United States v. Agurs*, 427 U.S., at 109–110, 96 S.Ct., at 2400, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Neither of these conditions is met on the facts of this case.

*Id*. at 488–89 (footnote omitted).

Justice O'Connor's concurrence adds necessary perspective to the Court' holding:

> Rules concerning preservation of evidence are generally matters of state, not federal constitutional law. *See United States v. Augenblick*, 393 U.S. 348, 352–353, 89 S.Ct. 528,

> 531–532, 21 L.Ed.2d 537 (1969). The failure to preserve breath samples does not render a prosecution fundamentally unfair, and thus cannot render breath-analysis tests inadmissible as evidence against the accused. *Id.*, at 356, 89 S.Ct., at 533. Similarly, the failure to employ alternative methods of testing blood-alcohol concentrations is of no due process concern, both because persons are presumed to know their rights under the law and because the existence of tests not used in no way affects the fundamental fairness of the convictions actually obtained.

*Id.* at 491–92 (O'Connor, J., concurring).

Clearly, the posture of *Trombetta* is different from this case—a post-destruction remedial trial evidentiary-admission question versus a pre-destruction preservative evidentiary question. As Justice O'Connor suggested, the Court need not dive into the depths of constitutionality, but simply consider the question as a matter of the Court's discretion within the boundaries of the present case, given the state court's deference to this Court in deciding the question.

This Court will use a more practical test better suited to the high stakes of a death penalty case, especially noting that, if habeas relief is granted, the state court always has the option of re-trying Petitioner rather than releasing him. That means *all* evidence will be important to Petitioner's (and the State's) trial counsel to review anew. Allowing the destruction of evidence in the face of knowing that a new trial is a viable option when federal habeas corpus relief is granted would be short-sighted and unwise.

In a civil case addressing whether an evidence preservation order should issue, *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433 (W.D. Pa. 2004), the federal district court formulated a three-factor balancing test "by molding

ORDER ON PENDING MOTIONS - 11

the factors used in granting injunctive relief with the considerations, policies and goals applicable to discovery," consisting of the following:

> (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Id*. at 433–34. The United States District Court for the Northern District of California has applied this test in a death penalty case. *See Stanley v. Ayers*, No. 07-CV-04727-EMC, 2018 WL 4488298, at *2 (N.D. Cal. Sept. 17, 2018) (granting an order that the district attorney's office may not destroy voir dire notes and records in four other capital cases tried by the prosecutor in Petitioner's case).

These factors, as applied to this case, demonstrate that an evidence preservation order is appropriate. The first factor, the level of concern for maintaining the integrity of the evidence without a federal preservation order, is high. Not only is Petitioner's life at stake, but the continuing fluctuation between two different jurisdictions with different versions of "finality" complicates preservation issues. Aside from those items protected by statue and rule, it is unclear from the state court's recent order whether any of the state courts' evidence preservation orders remain in place now. The State has provided no insight into how evidence preservation communication or training works when different agencies and successive employees are custodians of the evidence. *See* Dkt. 5-3, p. 9.

the factors used in granting injunctive relief with the considerations, policies and goals applicable to discovery," consisting of the following:

> (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*Id*. at 433–34. The United States District Court for the Northern District of California has applied this test in a death penalty case. *See Stanley v. Ayers*, No. 07-CV-04727-EMC, 2018 WL 4488298, at *2 (N.D. Cal. Sept. 17, 2018) (granting an order that the district attorney's office may not destroy voir dire notes and records in four other capital cases tried by the prosecutor in Petitioner's case).

These factors, as applied to this case, demonstrate that an evidence preservation order is appropriate. The first factor, the level of concern for maintaining the integrity of the evidence without a federal preservation order, is high. Not only is Petitioner's life at stake, but the continuing fluctuation between two different jurisdictions with different versions of "finality" complicates preservation issues. Aside from those items protected by statue and rule, it is unclear from the state court's recent order whether any of the state courts' evidence preservation orders remain in place now. The State has provided no insight into how evidence preservation communication or training works when different agencies and successive employees are custodians of the evidence. *See* Dkt. 5-3, p. 9.

In addition, it makes little sense that the State, which has nearly complete control of important evidence in a two-sided case—in a nation where the entire judicial system is dependent upon a fair adversarial system—can destroy the evidence rather than hand it over to Petitioner's counsel to preserve if the State decides, for whatever reason, that it no longer wants to preserve it in the midst of a death penalty case. But there is no provision in the law for this. Without a preservation order, Petitioner's defense (and, quite possibly, his life) rests on state custodians' good faith in keeping careful chain-of-custody documentation for all evidence in its possession and in training successive individual custodians to recognize this block of evidence as having particular importance.

For these same reasons, factor two weighs in favor of Petitioner—irreparable harm is likely to result absent an overarching order directing preservation until he is executed or until his federal case is completed through the level of the United States Supreme Court. Irreparable harm to Petitioner (and likely, the State) will occur if evidence is destroyed before any new jury trial for Petitioner following a grant of habeas relief.

Factor three gauges any detriment to the State. In its briefing, the State has not shown any prejudice or hardship preserving all of the evidence in Petitioner's case. Idaho has relatively few death penalty cases, and thus giving special attention to and allocating resources for these cases should not work a substantial—or even moderate—hardship on the State. Respondent has offered no good reason why the State cannot continue to preserve evidence that it already has been preserving all of these years.

The landscape of death penalty review is constantly changing, and that pattern is likely to continue. Science also continues to progress, adding new and unanticipated types

of testing and analysis. It would not serve the interests of justice if this Court ordered Petitioner to be retried or released but had earlier permitted the evidence to be destroyed. Petitioner would have little recourse, because the evidence would not have been destroyed in bad faith if neither court had acted to preserve it.

The three factors favor Petitioner's position, but, as the Court noted in its previous Order, a vague and amorphous order is not as effective for the parties, courts, and custodians as a particularized order. Therefore, the Court will order all of the evidence preserved, but only to the extent that Petitioner performs an investigation of what evidence exists, where that evidence is kept, and who its custodian is, and submits the results of that investigation to the Court within 150 days. Respondent (including State agencies and custodians of evidence) will be ordered to cooperate with Petitioner's investigation. After Petitioner's filing, the Court will enter an evidence preservation order.

## ORDER

**IT IS ORDERED:**

1. Petitioner Hall's Second Motion for Discovery (Dkt. 55) is DENIED without prejudice as premature.

2. Petitioner's Second Motion to Preserve Evidence (Dkt. 58) is GRANTED to the extent that Petitioner is required to perform an investigation of what evidence exists, where that evidence is kept, and who its custodian is, and to file that list with the Court within 150 days.

3. Respondent (including State agencies and custodians of evidence) must cooperate with Petitioner's reasonable efforts to perform his investigation.

4.  During the 150 days, the State shall preserve all evidence it currently possesses that relates to Petitioner's state and federal cases.

5.  Once Petitioner files his list, then the Court will enter an evidence preservation order, which will remain in effect until Mr. Hall is executed or until his federal case is completed through the level of the United States Supreme Court. If Petitioner is to be retried in state court after federal proceedings end, he will have to seek a preservation order in state court at that time.

DATED: November 1, 2022

David C. Nye
Chief U.S. District Court Judge